UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────X
In re:                                                    Chapter 7
                                                          Case No. 1-13-42802-nhl
Krishna Chaitan and Carol Chaitan
*aka* Carol Margaret Chaitan *aka* Carol M. Chaitan
*fka* Carol Dominique *fka* Carol Margaret
Dominique *fka* Carol M. Dominique

                        Debtors.
───────────────────────────────X

## MEMORANDUM DECISION AND ORDER
## DENYING OBJECTION TO PROOF OF CLAIM

APPEARANCES:

    Muennich & Bussard, LLP        Corporation Counsel of the City of New York
    by: Chistopher Bussard           by: Gabriela P. Cacuci
    30 Vessey St, 16th Floor           100 Church Street
    New York, NY 10007             New York, NY 10007
    *Attorney for Debtor*              *Attorney for the NYC Office of Administrative*
                                              *Trials and Hearings*

HONORABLE NANCY HERSHEY LORD
United States Bankruptcy Judge

       Krishna Chaitan and Carol Chaitan (the "Debtors"), filed a motion under 11 U.S.C. § 502(b)(1) (the "Objection") to object to Proof of Claim No. 1 (the "Claim") filed by the New York City Office of Administrative Trials and Hearings ("OATH"), arising from a series of citations issued by the Environmental Control Board ("ECB"). The issues before the Court are: (1) whether this Court has jurisdiction to entertain the Objection; (2) whether the Debtors have standing to object to the Claim; (3) whether a preclusion doctrine prohibits this Court from invalidating the Claim; and (4) whether the Claim is valid under applicable law.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes this Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

In 2008, Diananand Sundarsingh ("Diananand") and Mr. Chaitan co-signed a mortgage (the "Mortgage") secured by 8 Trinity Place, Staten Island, New York (the "House").[1] Objection Ex. A, ECF No. 27-2. Mr. Chaitan claims that Diananand and his brother Damien Sundarsingh ("Damien") lived in the House, and that Diananand "owned the house through a straw man, his brother Damien Sundarsingh." Objection ¶ 9, ECF No. 18. Also in 2008, Damien executed and recorded a deed (the "Deed") purporting to transfer the House from himself to himself and "Krishne Chaitan." Objection Ex. C, ECF No. 18-3. Mr. Chaitan asserts that he never exercised ownership rights to, or had a key for, the House. Objection ¶ 9, ECF No. 18. The Sundarsingh brothers subsequently abandoned the House and the Mortgage went into default. Objection ¶¶ 10–11, ECF No. 18.

The abandoned House fell into disrepair with overgrown shrubbery obstructing the sidewalk and refuse accumulating in the yard. Objection ¶ 12, ECF No. 18. On September 29, 2010, the ECB issued the first of numerous citations to "Krishne Chaitan" (or iterative spellings thereof) for violations of the New York City Administrative Code, including § 16-118

---

[1]   OATH's Response to the Objection also notes a property at 324 Broadway, Staten Island, New York 10310. No fines were imposed on that property. Objection Ex. A, ECF No. 18-1.

(prohibiting litter); § 16-120 (specifying acceptable receptacles for the removal of waste material); and § 16-123 (requiring the removal of snow, ice, and dirt from sidewalks).[2] Objection Ex. D 25, ECF No. 18-4.  Each time the ECB issued a citation, an officer filled out and signed the ticket and attempted to personally serve it upon an individual at the House.  Finding no one present, the officer affixed the ticket, and mailed a copy, to the House.  The front of each ticket described the details of the violation and stated:

> If you do not appear (or pay by mail if permitted) you will be held in default and subject to the maximum penalties permitted by law.  Failure to appear or pay a penalty imposed may lead to suspension of your license or other action affecting licenses you now have or may apply for as well as the possibility of a judgement [sic] entered against you in Civil Court
> . . .
> I, an employee of [N.Y.C. Department of Sanitation] personally observed the commission of the civil violation charged above.

Objection Ex. D, ECF No. 18-4.

In December of 2009, Mr. Chaitan received and ignored a summons in a foreclosure action against the House.[3] Objection Ex. E, ECF No. 18-5.

On August 20, 2012, Mr. Chaitan learned of the Deed to Damien and "Krishne Chaitan."  Around this time, he began receiving collection calls regarding the citations and requested a hearing to contest the accrued citations (the "Initial Citations"). Objection ¶ 17, ECF No. 18.  On October 11, 2012, Mr. Chaitan, represented by counsel, presented his arguments to an Administrative Law Judge (the "ALJ") at OATH.  After hearing the case on its merits, the ALJ dismissed three of the Initial Citations, due to technical defects, and upheld the remainder.

---

[2]   The ECB issued Citations on: 2/9/2011, 6/29/2011, 7/21/2011, 7/30/2011, 8/16/2011, 8/19/2011, 9/10/2011, 9/13/2011, 9/27/2011, 9/29/2011, 10/8/2011, 10/13/2011, 10/18/2011, 10/20/2011, 10/21/2011, 10/27/2011, 11/29/2011, 9/20/2012, 9/25/2012, 9/27/2012, 9/28/2012, 10/6/2012, 10/7/2012, 10/11/2012, 10/17/2012, and 10/25/2012. Objection Ex. A, ECF No. 18-1; Debtors' Reply Ex. A, ECF No. 27-1.

[3]   In January 2012, the foreclosure was discontinued. Objection Ex. F, ECF No. 18-6.

On November 16, 2012, Mr. Chaitan filed an administrative appeal with the ECB and, on January 23, 2013, the ECB upheld the ALJ's decision in a written opinion. Mr. Chaitan did not file an Article 78 petition to challenge the ECB's decision.

Because no one remedied the violations at the House, the ECB continued to issue citations in September and October of 2012 (the "Additional Citations" and, together with the Initial Citations, the "Citations"). Mr. Chaitan did not pursue available state remedies to challenge the Additional Citations.

On May 7, 2013, the Debtors filed a petition under chapter 7 of the Bankruptcy Code. On June 27, 2013, OATH filed the Claim for the unpaid Citations and, on September 23, 2013, the Debtors filed the Objection.

The Court heard oral arguments at a hearing on the Objection held on December 4, 2013. On January 10, 2014, OATH and the Debtors filed briefs addressing the Debtors' standing to object, an issue raised at the hearing. OATH Standing Brief, ECF No. 32; Debtor Standing Brief, ECF No. 33.

## DISCUSSION

For the reasons discussed below: this Court has jurisdiction to hear the Objection, as the *Rooker-Feldman* doctrine is inapplicable; the Debtors have standing to object to the Claim, as the debt is non-dischargeable; the Court is precluded from entertaining the Objection, as a previously decided matter; and the is Claim is allowed, as the underlying citations are valid.

### 1. *Jurisdiction & the Rooker-Feldman Doctrine*

OATH argues that under the *Rooker–Feldman* doctrine, this Court lacks jurisdiction to question the underlying Citations' validity. The *Rooker–Feldman* doctrine provides that a lower federal court, including a bankruptcy court, has no jurisdictional authority to review state-

4

court judgments. *In re 56 Walker LLC*, No. 13-11571, 2014 WL 1228835, at *3 (Bankr. S.D.N.Y. Mar. 25, 2014). The narrow doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 31–32 (Bankr. E.D.N.Y. 2014). The doctrine applies even if the case raises a federal question. *Exxon Mobil*, 544 U.S. at 284. However, *Rooker–Feldman* only strips federal courts of jurisdiction over cases filed after a state court renders a judgment; it is inapplicable to administrative decisions. *Verizon*, 535 U.S. at 644 n.3; *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *Van Harken v. City of Chi.*, 103 F.3d 1346, 1348–49 (7th Cir. 1997); *Narey v. Dean*, 32 F.3d 1521, 1525 (11th Cir. 1994); *Scott v. Flowers*, 910 F.2d 201, 206–08 (5th Cir. 1990); *Abiuso v. Donahoe*, 12-CV-1713 (JFB)(ETB), 2014 WL 1330641 at *8 (E.D.N.Y. Mar. 31, 2014); *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 362–65 (S.D.N.Y. 1999). Only after a state court reviews an administrative agency's decision does the decision constitute a state-court judgment to which *Rooker–Feldman* applies. *See Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 247 (S.D.N.Y. 2004).

The ECB and OATH operate outside of the New York State court system and their decisions are administrative.[4] Because a state court never reviewed the ECB and OATH decisions, they are not state-court decisions. *Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d at 247. Accordingly, the *Rooker-Feldman* doctrine is inapplicable and does not limit

---

[4] The ECB, charter agency created by Chapter 45 of the New York City Charter, operates under OATH, in accordance with New York City Charter Chapter 45 § 1049-a.

5

this Court's jurisdiction over the Objection.

### 2. *Standing*

OATH argues that the Debtor lacks standing—a prerequisite for seeking judicial redress. Standing arises from a legally protected interest in a case's outcome. *Tachiona v United States*, 386 F.3d 205, 210 (2d Cir. 2004). Standing in a bankruptcy case requires a pecuniary interest in the case's outcome. *In re Slack*, 164 BR 19, 22 (Bankr. N.D.N.Y. 1994). Although an individual has pecuniary interests in his debts before filing a bankruptcy petition, the chapter 7 discharge generally strips a debtor of these interests, thus eliminating his standing to object to most claims. *Id.* However, if there is a reasonable possibility for a surplus or distribution in the case, then the chapter 7 debtor has standing to object as a residual claimant. *In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109, 115–16 (2d Cir. 2000); *Pascazi v. Fiber Consultants, Inc.*, 445 B.R. 124, 127 (Bankr. S.D.N.Y. 2011). Alternatively, when a claim is non-dischargeable, the chapter 7 debtor has standing to object as a residual debtor. *In re Toms*, 229 B.R. 646, 651 (Bankr. E.D. Pa. 1999).

Here, the "Debtors concede that neither a distribution nor a surplus is likely." Debtor Standing Brief 3, ECF No. 33. However, the Debtors and ECB agree that "to the extent that the ECB's claim is valid, it is non-dischargeable." Debtor Standing Brief 3, ECF No. 33; *see also* OATH Standing Brief 8–9, ECF No. 32. Accordingly, the Debtors have standing to challenge the non-dischargeable Claim as residual debtors.

### 3. *Preclusion*

OATH argues that res judicata and collateral estoppel preclude this Court from reviewing the validity of the Citations and, consequently, the Claim. "The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel to relieve

parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). That tradition, codified by 28 U.S.C. § 1738, gives state court judgments the same preclusive force in a federal court as in the judgment-rendering court. *See Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 270 (1980); *see generally Hampton v. McConnel*, 16 U.S. 234 (1818). "If the proceedings of a state trial court comported with due process, every federal court must afford the final judgment entered therein the same preclusive effect it would be given in the courts of that state." *Conopco, Inc. v Roll Intern.*, 231 F3d 82, 87 (2d Cir. 2000); *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 85 (1984); *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982); *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997).

Res judicata prohibits re-litigating claims that could or should have been litigated in a prior proceeding. *Coliseum Towers Assoc. v. Cnty. of Nassau*, 637 N.Y.S.2d 972, 974 (N.Y. App. Div. 1996); *see also Hyman v. Hillelson*, 434 N.Y.S.2d 742, 744–45 (N.Y. App. Div. 1980) *aff'd*, 55 N.Y.2d 624 (1981). New York state courts apply res judicata liberally, taking a transactional approach, such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981). Res judicata applies not only to litigated court claims, but also to default judgments. *Silverman v. Leucadia, Inc.*, 548 N.Y.S.2d 720, 721 (N.Y. App. Div. 1989); *see Rizzo v. Ippolito*, 524 N.Y.S.2d 255, 257 (N.Y. App. Div. 1988); *119 Rosset Corp. v. Blimpy of N.Y. Corp.*, 409 N.Y.S.2d 735, 736 (N.Y. App. Div. 1978).

Collateral estoppel prohibits re-litigating decided issues of fact or law. *Allen*, 449

U.S. at 94. Under New York law, collateral estoppel requires the issue to be identical to the one raised previously and for there to have been a full and fair opportunity to be heard. *Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 266 (1988). In applying collateral estoppel, courts consider "the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence, the differences in the applicable law and the foreseeability of future litigation." *Ryan*, 62 N.Y.2d at 501.

New York applies both res judicata and collateral estoppel to quasi-judicial administrative decisions. *Josey v. Goord*, 9 N.Y.3d 386, 389–90 (N.Y. App. Div. 2007); *Jeffreys v. Griffin*, 1 N.Y.3d 34, 40 (2003); *Allied Chem. v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276 (1988). To qualify as a quasi-judicial proceeding, the agency must employ procedures "sufficient both quantitatively and qualitatively . . . to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." *Jeffreys*, 1 N.Y.3d at 40–41 (internal quotation omitted). Thus, decisions "rendered pursuant to the adjudicatory authority of an agency . . . employing procedures substantially similar to those used in a court of law" are given preclusive effect. *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 499 (1984).

The Debtors argue that this Court may nevertheless intercede on decided matters, citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Under *Burgos*, res judicata, does "not apply . . . where 'the initial forum did not have the power to award the full measure of relief sought in the later litigation.'" *Burgos* 14 F.3d at 790 (2d Cir. 1994) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) (holding res judicata does not bar a 42 U.S.C. § 1983 suit for monetary damages when the state court action could only grant habeas relief). In *Burgos*, the Second Circuit held that res judicata does not bar a suit for monetary damages when

the state court could only provide equitable relief. *Burgos* 14 F.3d at 790.  Here, however, Mr. Chaitan's seeks the same remedy from this Court that he did before the ECB and OATH— invalidation of the Citations.

Mr. Chaitan, represented by counsel, challenged the Initial Citations before the ALJ. Before ruling against Mr. Chaitan, the ALJ considered the same arguments and evidence Mr. Chaitan now submits to this Court.  The ECB also reviewed the same arguments and evidence before affirming the ALJ's decision.  Both the ALJ and the ECB issued written opinions.  This Court finds that the proceedings and procedures employed by the ECB and OATH sufficiently and fully aired and tested Mr. Chaitan's liability for the House and the presence of the underlying violations.  Accordingly, as to those two matters, res judicata bars further litigation of claims arising out of the same occurrences and transactions that were, or could have been, litigated; likewise, collateral estoppel bars further litigation of issues raised and decided.  However, res judicata and collateral estoppel are inapplicable to the two matters undecided by the ECB and OATH: Mr. Chaitan's constitutional arguments and the validity of the Additional Citations included in the Claim.

### 4. *Due Process Violations*

The Debtors raise several constitutional challenges to the Claim rooted in the Due Process Clause of the Fourteenth Amendment, which guarantees fairness through "reasonable notice and reasonable opportunity to be heard." *Dohany v. Rogers*, 281 U.S. 362, 369 (1930). The Debtors allege that due process injuries render the Claim invalid and it should, therefore, be disallowed. First, the Debtors argue that holding Mr. Chaitan strictly liable for wholly passive conduct is impermissible under *Lambert v. California*, 355 U.S. 225 (1957).  Second, Debtors argue that service of process was not "reasonably calculated, under all the circumstances, to

apprise" Mr. Chaitan of the Citations. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Third, the Debtors argue that the ECB knew, or should have known, that the service of process was ineffective. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

Notice is "[e]ngrained in our concept of due process." *Lambert*, 355 U.S. at 228. As the United States Supreme Court explained in *Lambert*, notice serves two functions: the opportunity to behave lawfully and the chance to defend against charges. 355 U.S. at 225. Accordingly, as the Court held in *Lambert*, strict liability for a wholly passive crime is unconstitutional if the individual has no reason to know of the law. In that case, California instituted a law requiring all felons to register within five days of entering the state. Ms. Lambert, a felon, failed to register after entering California, and was held criminally liable under the statute. *Id.* The Court held that strict liability, under those circumstances, was unconstitutional. *Id.* However, strict liability for wholly passive conduct is permissible in similar situations if individuals are on notice of the law. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) (upholding law requiring that sex offenders register).

In arguing that the ECB Citations violate his procedural due process rights, as set forth in *Lambert*, the Debtor fails to recognize that the critical factor in *Lambert* was not strict liability for passive conduct, but the absence of notice. *Lambert*, 355 U.S. 225. Mr. Chaitan co-signed the Mortgage, thereby exposing himself to significant obligations and risks. By signing the Mortgage, Mr. Chaitan expressly granted the bank an interest in the House; if he had no interest to grant, then his signature might constitute a fraudulent misrepresentation. Additionally, Mr. Chaitan was or should have been aware of his interest in the House after receiving the notice of foreclosure in December 2009 and collection calls regarding the Citations in August 2012. Objection Ex. D, ECF No. 18-4. Moreover, Mr. Chaitan had an interest in

ensuring the property was in good repair because, as a co-signor, he stood liable for a deficiency judgment after a foreclosure. Finally, property ownership is not wholly passive—the failure to maintain buildings subjects a property's owner to liability.

Notice also implicates service of process. Service must be reasonably calculated, under all the circumstances to apprise the defendant of the charges. *Jones*, 547 U.S. at 220. Additionally, if a party has reason to know that service failed to reach the intended target, then service is inadequate, even if service was "reasonably calculated" at dispatch. *Mullane*, 339 U.S. at 306.

The purpose of service is to allow a full and fair hearing on the merits; thus, the remedy for improper service, if practical, is to provide a full and fair hearing on the merits. *See generally Wilmer v. Beddoe*, 958 N.Y.S.2d 388 (N.Y. App. Div. 2013). In *Wilmer*, the court held that service of process was insufficient after the ECB failed to make a "reasonable attempt" at personal service. *Id.* at 388. That court vacated an ECB default order and remanded the issue for a determination on the merits. *Id.* Similarly, in *Gallo*, the court held that Gallo was entitled to vacate a default judgment and have a hearing on the merits after the state failed to effect personal service. *Gallo v. City of New York*, 36 Misc. 3d. 1204(A), 954 N.Y.S.2d 759 (N.Y. Sup. Ct. 2012).

Here, Mr. Chaitan received a hearing on the merits on October 11, 2012. The hearing was more than just a rubber stamp—the ALJ heard Mr. Chaitan's arguments, dismissed three Citations due to technical errors, and issued a written opinion explaining his rational. Thus, any due process violations relating to the Citations addressed at that hearing are null, including inadequate service.

In evaluating the constitutional adequacy of process, courts consider both the

11

procedures followed and the remedies available. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). A plaintiff must take "advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir. 1982). "If . . . a process on the books . . . appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki*, 227 F3d 107, 116 (3d Cir. 2000) (citing *Dwyer v. Regan,* 777 F.2d 825, 834–35 (2d Cir. 1985)). Moreover, "a claimant cannot . . . let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open." *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) (citing *Gamble v. Eau Claire Co.*, 5 F.3d 285, 286 (7th Cir. 1993)).

In New York, a party harmed by the ECB and OATH, based upon a constitutional due process violation or otherwise, can file an Article 78 petition to request a hearing. N.Y. C.P.L.R. 7801 (McKinney 2013). An Article 78 proceeding can redress any administrative agency due process abuse by providing mandamus relief and remanding the case for a new hearing. N.Y. C.P.L.R. 7803 (McKinney 2013). Accordingly, the availability of an Article 78 hearing is sufficient to correct an agency's due process error. *See Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988); *Hughes Vill. Rest., Inc. v. Vill. of Castleton-on-Hudson*, 848 N.Y.S.2d 384, 386–87 (N.Y. App. Div. 2007).

An Article 78 petition and hearing could have resolved Mr. Chaitan's constitutional complaints by granting mandamus relief. Although represented by counsel at the hearing, Mr. Chaitan did not file an Article 78 petition to pursue the unanswered constitutional questions. By failing to file an Article 78 petition, Mr. Chaitan allowed the applicable four-month statute of limitations to lapse; thus, making state remedies unavailable. Unfortunately, this Court is

powerless under the circumstances to modify the Citations. *See Vandor*, 301 F.3d at 39 (citing *Gamble*, 5 F.3d at 286).

### 5. *Liability for the Citations*

Mr. Chaitan contends that his liability for the Citations depends on his ownership of the House; thus, he argues that his liability would require deed reformation, changing ownership from "Krishne Chaitan" to "Krishna Chaitan."

Mr. Chaitan's Citations were for violations of Administrative Code of the City of New York. The relevant code sections have two elements: (1) that the cited party is "[t]he owner, lessee, agent, occupant or other person who manages or controls a building or dwelling," and (2) the underlying violation. The agency, to sustain a fine, must be convinced of both elements by a "preponderance of the credible evidence." 48 R.C.N.Y. § 3-54. Additionally, on review, OATH decisions that are not "arbitrary or capricious" are upheld. N.Y. C.P.L.R. § 7803 (McKinney 2013). In contrast, a proponent of a deed reformation must establish their right to relief by clear and convincing evidence—it is unavailable upon a "probability nor even upon a mere preponderance of evidence." *Ross v. Food Specialties*, 6 N.Y.2d 336, 341 (1959) (internal citations omitted).

Mr. Chaitan's argument, that the actions by the ECB and OATH constitute an *ultra vires* deed reformation, is incorrect.[5] The ALJ was only required to find, by a "preponderance of the credible evidence," that Mr. Chaitan was both "[t]he owner, lessee, agent, occupant or other person who manages or controls a building or dwelling," and the presence of the underlying violations, 48 R.C.N.Y. § 3-54, which he did.

---

[5] The clear and convincing standard used to reform deeds is, by definition, irrelevant to the "preponderance of evidence" used by the ECB and OATH. 48 R.C.N.Y. § 3-54.

13

Even if this Court were to consider the underlying violations, ample evidence supports the ECB's position: the Mortgage and the Deed. Therefore, if charged with determining whether the decision was arbitrary or capricious, this Court decides that it was not. Moreover, if charged with determining the validity of the Additional Citations, this Court holds that Mr. Chaitan was the "owner, lessee, agent, occupant or other person who manages or controls [the] building or dwelling," by a preponderance of the credible evidence, and the Additional Citations are therefore valid.

Accordingly, the violations assessed against Mr. Chaitan are valid; thus, the Claim is valid.

## **CONCLUSION**

For the reasons set forth above, the Objection is denied.

**SO ORDERED**



Dated: September 30, 2014  
Brooklyn, New York

Nancy Hershey Lord  
United States Bankruptcy Judge